Good morning. May it please the Court, I'm Archelina Panto, and I'm appearing for Plaintiff and Appellant, Deputy Asha Perez, now Asha Bowling by marriage, but I will continue to refer to her as Deputy Perez. Because of time limitations, I'm going to refer to cases in shorthand. They're all listed in the tables of contents, and I'm also going to refer to California's Fair Employment and Housing Act as FEHA. It's a very common abbreviation. Practitioners of plaintiff's far employment bear a heavy burden considering Brown. That was the case that I mentioned yesterday. I mentioned that in my 28J letter yesterday, that we have to file all FEHA and tort claims together at the same time, and that's a California Supreme Court standard. Here, most simply, Deputy Perez has been prevented from accessing rights of paramount public interest, to be free from discrimination at work, and to have a jury trial when one is demanded. This case is complicated procedurally, but we did not err in our pursuit. The district court erred in ignoring Williams v. Hakla. Plaintiffs cannot ignore law or controlling authorities. We present a very simple solution here. The law is settled that when a public employee grieves discrimination internally, that employee will be barred from grieving externally. And ACSO, Alameda County Sheriff's Office, I'll refer to as ACSO, they rely on cases Johnson, Page, Castillo, and Miller. Miller has been overruled to a certain extent, certainly considering Schifando. Alitoso, can I just ask you a basic question, because I want to make sure I'm oriented in terms of your legal argument. Okay. Is your position that if an employee is forced to bring certain claims in one of these cases, they are exempt from the application of ordinary principles of issue preclusion? I don't know how any party could ever really be exempt from issue preclusion. And I think we acknowledge that quite clearly. So, right. I mean, that's why I was hoping that you would say that, because I don't know of any case that would support. If that was your argument, I don't know how you would get there. But so I look at this record, and I see pretty much all of your claim, all of your clients' claims, maybe except for the sex discrimination claim, as having been the subject of case-dispositive factual findings that the ALJ made. And unless we're going to apply ordinary principles of issue preclusion, I don't see how those claims survive. So maybe you can just zero in on that. Ordinary issues of issue preclusion would be YKA. That's the collateral estoppel California case. Considering MiGRA, Federal court has to apply the State court standards. So we look at Lucido. Lucido is the race judicata case. And the Pacific Lumber case demands that before collateral estoppel is applied, we have to look to the public interest. And really, to apply collateral estoppel here, or race judicata here, is to fly in the face of the California legislature, the California Supreme Court. Employees, public employees have a right to grieve externally. But just so are you arguing then that because of some matters of, you know, issue of public policy, that ordinary principles of issue preclusion don't apply in this context? Is that your argument? My response to that question is that ordinary principles of issue preclusion demand another layer of analysis. So we have all the Lucido factors, same parties, same issues, definitely not same issues, definitely not same claims. Plaintiff Deputy Perez, her union representative, did not at all argue Fair Employment and Housing Act issues. That was not argued at the civil service hearing. The risk here is that a public employer can redirect the entire internal proceeding, which my client only did because of Williams v. Hakla. We didn't have the option to not do it. So we were forced to do it, and then the employer can skew that process, which we have case law. Shifando says those procedures are very biased towards the employer. My client wanted to get out of Alameda County entirely and sent that message clearly, grieved externally. She did not grieve internally any FIHA claims at all. They were all fully exhausted externally with the Department of Fair Employment and Housing, and the lawsuit was filed. The employer was on notice. The employer could not claim that it did not know that she wanted those claims to be heard by a jury. That's the other issue, is that we have lots of these cases talk about how employees before they're represented, they don't even know that they might be waiving their jury trial rights. The Page plaintiff, I think the Page plaintiff is easily distinguished in many ways. That plaintiff clearly internally grieved. There was give and take, and then that plaintiff declined the job offer. So she fully used the remedy internally to grieve discrimination and failure to accommodate. My client here did not want to put those issues before the county at all and had no choice but to go through with the union grievance procedures with the internal civil service hearing because of Williams v. Hakla. And the the the Are you saying that your client couldn't have decided, you know what, I'm just not going to go through the internal grievance procedure. I just want to go straight into court and I'll sacrifice whatever claims I might have had to have exhausted through the internal grievance procedure. What my client did was exercise the Schifando choice. And what that would demand or what that would require, what that would dictate is that public employees do not have the same tools on the battlefield against discrimination as public employees. Public employees do not have to do that. State Personnel Board is an on-bonk California Supreme Court case. Public employees deserve the same tools on the battlefield as private employees. And right now, public employees have public employers have these routes and these workarounds. I mean, essentially right now, women complained about discrimination in Alameda County Sheriff's Office and nothing will ever be done, ever. It does not matter. It doesn't matter how many times I complain on behalf of my client who still works there. They will never do anything. There's not a chance to accomplish anything. If we if we grieve internally, we're going to fail. I mean, it's completely pointless for public employees. So why couldn't your client have just decided, you know what, I'm just not even going to waste my time. I've got a legitimate retaliation claim. I've got a legitimate sex discrimination claim. I'm just going straight into court. I've externally grieved those with FIHA and forget about the internal grievance. She could have done that, right? The issue with that is they could have claimed failure to continue administrative remedies. If we fail to grieve with the union, then we've failed. If we fail to grieve internally, then we've failed. It wouldn't have mattered. Whatever choice we would have made, the county would have held it against us. Whatever choice we would have made, the county would have said you failed to exhaust one administrative remedy or another. Here they're saying we failed to exhaust judicial remedies, but we didn't. We exercised judicial remedy. We exercised the choice. At any point in time, the county could have come to me, her privately retained counsel, prosecuting the FIHA claims and said, do we really need to go through with the civil service hearing? And I would say, no, of course not. We would rather not go through with it. If you're telling me that you're not going to hold it against my client, that she's not going all the way through with the whole union grievance procedure and prevent her forever from recovering for the year demotion, the year step down, the year penalty pay, if you're telling me that we have a chance to address this improper and inappropriate disciplinary action without going through this civil service hearing, then certainly I would do it. And now, where I am now in my practice, I can write to the county and say I'm demanding this or I'm demanding that and get a good record as far as what we should do. But I don't have the option to ignore controlling authorities. I did not have the option to ignore Williams. I did not have the option to ignore Brown. And really, we have Supreme Court cases on this, so Williams should not even be treated as important as Runyon, Arbuckle. We have very clear cases in California where if Your Honor is suggesting that we shouldn't have to go through with it, I agree completely. I agree completely. But hindsight is 20-20, and the laws are on the books. I don't get to choose what I ignore. So I have to follow all of the current controlling authorities. And what we're looking for here is a very simple solution in the Runyon rule. The Runyon rule says that for whistleblowers, for government whistleblowers, there is an exception for normal collateral estoppel or normal issue preclusion. For government whistleblowers, even if they go through with the civil service hearing, whether it's reviewed or not, it should not have preclusive effect. And Arbuckle says for government whistleblowers, they don't have to grieve at all. And I would love that if that were the truth for FEHA whistleblowers. Essentially, Plaintiff Deputy Perez has a FEHA whistleblower claim, but FEHA was treated differently. FEHA was taken out of the line of cases, out of the Schifando progeny by Williams. Essentially, the State Personnel Board decision and the Schifando decision make it very clear that the intent of the Supreme Court of the State of California was to give public employees the same rights as everyone else, that they can choose to grieve externally. That's exactly what we did. We don't know why the Williams court made the decision that it made, but it limited that Schifando exception. It limited the Schifando exception, and it made it almost impossible. It created an unworkable standard where someone who would complain, someone who that was a constructive discharge. So basically what Williams said was this plaintiff cannot sue for constructive discharge because this plaintiff did not complain internally about a constructive discharge. And it just doesn't make sense that how could anyone – there's no way that a public employee could grieve internally a constructive discharge for relief. There's not relief there. And the public policy that Williams was claiming is, well, people will run into court with fake FEHA claims to get their tort claims heard. No one runs into court with fake FEHA claims. We still want to work with this employer to correct this workplace. My client still works there every day in a jail, cannot get back to patrol. There was a conspiracy of her supervising officers. They set her up. They let all the male deputies look for lost paperwork. They did not let her look for lost paperwork. The sergeant found her lost paperwork, held it against her. Now we have this terrible traumatic civil service hearing experience for her as well, where the claims were not developed in such a way to expose the discrimination or the pattern of discrimination and all of the other complaints of discrimination that came in at the same time. And it – Well, if your – if your argument is that she has a straight sex discrimination claim in the sense that, yeah, maybe I violated department policies, but male deputies were doing the same thing and not having discipline assessed against them, I mean, I – I'm certainly open to hearing from the other side as to why that claim is precluded. It doesn't seem to me there were any findings by the ALJ that addressed that. But as the retaliation claim, it seems to me your client is the one who tried to interject that issue as a defense to the charge that she had not – not, in fact, done what she was supposed to under department policies. And the ALJ did make a finding as to that, that, no, this was – you were docked a – what was it? She was docked pay for a year, basically?  And transferred, or maybe it was just a docking. Well, she had – and I'm sorry. Yeah, no, but that – the ALJ found that that occurred because you really did, you know, not follow department policies. It wasn't because of some retaliatory motive. As far as failing to – I have some citations on that, actually, and how the county put it at issue. My client did not argue retaliation. The county put it at issue. And that's – that's inherently unfair. If the county can have this nefarious plan to cheat a client out of – an employee out of their rights by saying this is retaliatory, isn't it? I mean, my client can't refuse to answer that question. And her union representative was not me. I mean, that was a totally different proceeding. So the citations that I have on that, actually, are page 191, 192, lines 9 to 22, and 197, lines 5 to 9. I also did submit the statement of defenses that should have been produced by defendants in discovery and was not. Are those the cites you gave us from the ER? I'm sorry? Yes, those were, yes. Okay, so what document are you – what document does that come from? They come from the civil service – it comes from the civil service hearing itself, where the county bears the burden of defending the disciplinary action. And the county asked one of its witnesses, was there anything else that she told you? And she mentioned the conspiracy theory. And everyone knew that there was a Federal lawsuit pending with the conspiracy to deprive of civil rights. So it would be patently unfair to have the employer recharacterize those proceedings when my client did not put any FEHA claims at issue there. The issue was, was that search improper? Was that unfair, the way that that officer, the sergeant, did that search? And the reality is, it wasn't behind a locked door. These were pretty public, open spaces that could be searched. And that was certainly determined at that civil service hearing. But what was not determined was, why were the men given a chance to search for their documentation and not my client? Why were the other female deputies working with her at the time complaining of discrimination? Why were the other female employees working with her at the time being written up for being late, being mocked, being degraded, being referred to as pink flamingos? There is too much bad activity here that was not heard at the civil service hearing at all that my client did not put at issue there. I never tried to put at issue there. So the county reworked how the proceedings went in such a way as to deprive my client of her claims. But we had already exhausted. There's nothing on the books about when a public employee exhausts precedence, makes that choice, makes a clear Schifando State Personnel Board choice. Do not decide this, county. We're taking this elsewhere. The county ignored us and continues to ignore us and seems to be, will continually ignore us. There seems to be no way to remedy this situation. And it's manifest injustice for my client to have made her jury demand, to have made her Seventh Amendment jury demand and have that be ignored and denied because of a procedural obstacle that the county invented for itself. They have lots of ways of protecting themselves from claims. So the Williams justification of, well, we have to protect employers from false claims is nowhere near as important as we need to protect our employees in the State of California from discrimination in all forms. We must investigate. The county has never done an investigation and will never do an investigation because they obviously can get away with things like this and treat their loyal employee like this. That's why I cited the Little case in my 28-J letter yesterday. And I thank the Court so much for hearing me. Reserve for rebuttal. Roberts. Roberts. We'll give you a couple minutes for rebuttal. Thank you. If we can hear from the county. Good morning, Your Honors. May it please the Court, my name is Christine Maloney. I represent the Alameda County Sheriff's Office, Sheriff Ahearn, and four other individual defendants in this case. I'm going to start today by letting you know that I've been a public sector employment lawyer for 22 years. And today is the first time that I have ever heard that public sector employees have fewer rights than private sector employees. Obviously, such is not the case. Public sector employees have civil service proceedings and administrative remedies available to their employees to challenge disciplinary actions and other employment decisions. So if Deputy Perez had decided, you know what, I'll just forget about your thanks for the internal administrative proceedings you make available to me, but no thanks. I'd like to just go straight into court, and I'd like to press my FIHA claims. Would there be some exhaustion bar that you would then invoke? There would be no exhaustion bar. I agree completely that Schifando gave her the right to bypass civil service commission altogether and go straight to court. In this particular case, she wants you to focus on Williams and say Williams gave her a terrible choice and she didn't know what to do with it. Williams is not that baffling. Williams says, protective of public employees, not only do you not have to go to civil service with your FIHA claims, you don't have to go with your nonstatutory FIHA-related claims. So if any of those other claims could have preclusive effect if decided in civil service on your FIHA claims, you don't have to exhaust those either. Plaintiff tries to fashion her going to civil service into that exception, arguing that she had non-FIHA-related claims that she had to exhaust, and that's just not the case. And I would refer you, first of all, she says these are her tort claims, that she had to go to civil service to exhaust her tort claims. I'm going to start with the proposition that there is no common law tort claim that can be brought against a public entity in California. We have governmental immunity under Government Code Section 815 that precludes bringing a claim for intentional infliction of emotional distress, negligent infliction of emotional distress, negligent hiring and supervision, her tort claims, against a public entity. So the idea that she had to exhaust claims that don't properly exist is absurd. Second, the tort claims are based on the exact same facts and circumstances as your FIHA claims. If you look at the plaintiff's complaint, it is a shotgun pleading. It, as we very often see, alleges a very large common set of facts that relate to the performance improvement plan, the discipline, the transfer. She then asserts at the end, negligent hiring and supervision, intentional and negligent infliction of emotional distress, incorporating, by reference, all of those common facts into those claims. Those are not separate claims. This is unlike the situation described in Williams when the employee had claims that were based on FIHA retaliation and then very separately based on public policy retaliation for obeying a court subpoena. It's a very different circumstance. Actually, that's the Page case. Alitonovich Well, let's put aside, you know, the extent to which she was, she felt I guess, as I mentioned when your opponent was up here, I don't see any findings by the ALJ that would preclude her sex discrimination claim. Maybe you can address that. I'm inclined to think the district court erred in granting issue preclusion on that front. Anderson The gender discrimination claim was fully addressed, along with retaliation and harassment, in the proceeding. The most clear ---- Alitonovich I have the ALJ's decision in front of me. So just tell me what paragraph, what page to look at where the ALJ made findings that would preclude her from proceeding on the sex discrimination claim. Anderson I think the clearest one is in paragraph 20, where she describes the arguments that have been made as to why the discipline and there is a conspiracy against her. And the ALJ concluded that the appellant concocted a story that these things were going to occur based on initially this conflict with Sergeant Wolfe, and then subsequently. Alitonovich Well, so, okay. So what I understand the ALJ to be addressing in paragraph 20 is the plaintiff's first position was, I, in fact, fully complied with all the policy, the department's policies. I don't even know what these people are talking about. They just made this stuff up. The ALJ, I agree with you, in paragraph 20 clearly rejects that. Her sex discrimination claim, however, is founded on the notion that, okay, even if I didn't follow these policies, they were letting the male deputies do the exact same noncompliance with department policy, and they weren't getting any discipline imposed against them. That strikes me as a potentially valid sex discrimination claim that's not addressed at all by paragraph 20 of the ALJ's findings. Anderson The evidence certainly came in on that. And I think the ALJ does address that in her final statement, that appellant raised various defenses and theories in her opening statement and closing brief. All contentions made by appellant not specifically addressed herein are found to be without merit and rejected. So that was a defense that was clearly argued. You recall that the appellant brought three witnesses to talk about that, Sadie Devine, Claudia Stallworth, Pam Landry, the same exact witnesses that appear on her initial disclosures in this case, identical witnesses in both cases. And each of those three people came in and talked about gender discrimination in the department and their own experiences with that. So this issue was tried, and I believe the ALJ on the other side of the aisle is going to have to deal with it. Alito How is that – how is a finding as to sex discrimination, in the way that I framed it, necessary to the ALJ's decision here, which all the ALJ was asked to decide is was there good cause for imposing this stock and pay for a year, right? Anderson And one of the defenses to the argument was that she was being treated differently than the male deputies who she claims whose paperwork was not being scrutinized, who was not subject to searches, and had missing paperwork and didn't receive the same discipline as her. Those were the facts that she developed in the case. And so I do think that goes to what the ALJ found in terms of upholding the discipline and finding that it was for just cause. She, you know, by the very nature of it, had to rule out the defense that had been raised, that it was disparate treatment and for an impermissible reason. Recall that the Alameda County Civil Service Commission is specifically empowered by its own charter to decide issues of discrimination in the workplace. And so this was a proper defense that the appellant raised before the Civil Service Commission and that the ALJ considered. It was within her power to do so. I know that Appellant has made some arguments in her briefing that Civil Service Commissions don't have the power to decide FIHA claims. That's patently untrue. We know from the cases that she cites, State Personnel Board and Ruiz, that the California courts have said public employees actually have a choice. They don't have just one forum to go to court, hire a lawyer, spend a lot of money, and wait a few years. They also have the option to go to a Civil Service Commission and have the same issue decided expediently and less costly. Public employees have more choices. So I believe that that issue was quite fully litigated by the calling of the three witnesses. Hearing that evidence, I mean, it was quite blatant. I mean, the only finding you're able to do, well, I wouldn't even call it a finding. It's just that catchall, you know, everything else that I haven't talked about is rejected. That's the best that you think you've got on the sex discrimination claim. All the evidence introduced as to why the decision was not proper, which included sex discrimination, and the judge's finding that it was for just cause, and then the catchall that she had everything else that's not specifically addressed, she considered and rejected. I'd say it's three things. Okay. So maybe just where in the record do you, in the record of that administrative proceeding that led to the ALJ's decision, where, maybe point us to where in the record do you think she interjected sex discrimination as a defense to the finding of good cause for the discipline being imposed? It's actually several places throughout. In the testimony, and it's the entire testimony of Stallworth, Landry, and Devine, who testified that they were treated differently. Devine was one of her fellow patrol officers at AC Transit. Devine testified that she was subject to the same kind of scrutiny as the plaintiff. That was that evidence. At ER 1183, Ms. Deputy Perez's attorney asked Devine, while working at AC Transit, did you ever see female deputies being treated differently than male deputies? If that's not injecting the issue of sex discrimination, then I don't know what sex discrimination is. The county's attorney objected, said relevance. And the appellant's attorney said, it goes to the retaliation claim. That objection was overruled. It was allowed to be, the witness was allowed to answer, and she said, yes, I did. How so? They did it to me. And she went on to explain how she was subject to sex discrimination. So it, it was. Yeah, and that goes to the retaliation claim. I'm inclined to agree with you that that was interjected as a very specific defense, and I agree with you that the ALJ did make a finding as to the retaliation claim. But, okay, is there something else more you've got besides that for the sex discrimination? Well, and so there's other places in the records where they talked about the differences between how the male deputies were treated with respect to their paperwork versus how the appellant was treated with respect to hers. So it's that, it's the finding that there was just cause for the discipline and the overall finding. Those are the three things. Okay. I could probably find more places. I'm certain I, there are more places where the male-female distinction was discussed. And it was always discussed by the appellant's attorney or her three witnesses. Okay. I got you. Okay. So with respect to this so-called Schifando decision, appellant had the option of going to court and seeking her Federal right to a jury trial or State right to a jury trial. She had the option of going to civil service only and having it decided in a faster, more expedient way. Or she had the option of doing both, which is what she chose. And Schifando says those are the employee's options. They can go to one, the other, or both. However, if they go to both, they're going to run into the procedural minefield that Schifando, Williams, and Page talk about. And the plaintiff in this case walked headlong into that procedural minefield on seeking a fast resolution of her discipline while at the same time maintaining the Federal civil rights action. In this case, the timing has been a little convoluted by appellant in her argument. She initially filed her civil service appeal. After filing her civil service appeal, she filed the Federal court lawsuit. And while that, when she filed that Federal court lawsuit, she did nothing to withdraw the civil service appeal. Rather, she proceeded headlong into the hearing that happened several months later. At any point in time, up to engaging in that hearing and allowing a decision to be made, she could have walked away, according to the California cases. She didn't do that. She kept proceeding and pushing for a resolution. And we have to believe that if the decision had gone in her favor, she would have no objections. It's only because it didn't go in her favor that we're here. Okay. So the district court did not err when it determined that the civil service commission's determination had preclusive effect on this lawsuit. I don't think there's any dispute that the Utah construction standards exist here and apply. I haven't heard plaintiff argue otherwise. With regard to the issues of collateral estoppel, the only ones that I have heard the plaintiff actually challenge is the argument that the issue did not get decided in the prior proceeding. She has argued that it was the county's attorneys who tried to litigate that issue. And if you go back and actually examine the record, you will see that it was not the county raising this issue. The county put on their opening case without eliciting any evidence of harassment, discrimination, or retaliation. The appellant's attorney put it on in her opening statement. In her actually pre-hearing motions to quash evidence, and in her cross-examination of the county's witnesses, and in her direct examination of her own witnesses. Only at two point in the proceedings does the lawsuit even get mentioned. During opening statement, when she said, we've also got a Federal court lawsuit, there's no statement there, we don't want these issues heard here because we're protecting that. And then at the end, we also have a retaliation claim in our Federal court lawsuit. But in between, they tried those case – those arguments vigorously. They can't have it both ways. So we believe that the issue has been shown to be actually litigated in the prior proceeding. I think all of the issues in the Federal court case were litigated because it all – they all derive from that same common set of facts in the complaint, the shotgun complaint, about the performance improvement plan, the discipline, the transfer, and those are the actions. The decision was final on the merits. I know that plaintiff at oral argument at the 11th hour tried to claim that the Civil Service Commission decision was not final because it was not sent to the appellant. There is no evidence in the record to that effect. None. The only evidence in the record actually show that a certificate of mailing was completed, and it shows that it was sent to the appellant, Ms. Perez, along with several other people. That happened on May 6th, 2011, and that triggered the finality of the decision, at least for purposes of statute of limitations. I don't think there's any argument based on any evidence anywhere in the record that Ms. Perez did not get that notice. And so the decision was final. All right. And down to my final seconds. I would like to object to the supplemental authorities provided yesterday at 5.15 p.m. They are respectively 23 and 29 years old. There is no reason they were provided for the first time yesterday. We object to their consideration. Thank you. Roberts. Thank you. Appreciate the arguments. And, counsel, you have we'll give you a couple minutes for rebuttal. It's actually at least somewhat absurd to hear a public employer say that we can't sue for torts, we can, we send a tort claim, and then we sue for torts. It's Government Code 910, so that's a little bit absurd. As far as withdrawing the civil service hearing, no. Palmer, we have a very clear case on this. An employee must not withdraw on the civil service hearing or that employee will forever be barred from filing for torts. And I think I understand that what the court is basically implying is kind of let go of the torts. And I think that that's a very tempting, tempting thing to do. I just don't know that we necessarily have that right or privilege considering Brown, the Supreme Court Brown. And on the proof of service, the proof of service was flawed. It's in the record. We know it's in the record. Defendants put it in the record. On page 22 on my reply brief, I put cases in there that make it very clear. They failed to serve anyone with that, so that the notice was never triggered on the writ of mandate. The issue with a writ of mandate is, Ryan would suggest that that should not be preclusive no matter what. And Arbuckle would suggest that we don't have to go through with the civil service hearing no matter what. But the primary issue is that if an employee, a public employee needs a private attorney to help with civil rights and access civil rights, there's very little we can do with the union attorney. The union attorney has every right to choose my witnesses if that's what the union attorney wants to do. We have very limited control over that. And the county had a lot more control over those proceedings than my client did, who was forced to go through with the union's grievance procedures. Absolutely, the county would have argued that we failed to follow through. No matter what we did, the county would argue that we failed to do something procedurally correctly. Also, the internal policy of this employer says we can grieve externally. That's in the excerpts of Record 544. The policy says we can grieve externally. So there are more issues here as far as why the county is not even honoring its own internal policies. And perhaps the best thing to do for plaintiffs in this situation is to submit an England reservation at the civil service hearing to say we want these things reserved. Please don't touch them. But hindsight is 20-20, and we did not have the possibility of doing that at the time. Also, Williams makes it very clear. Williams is not an expansion on Schifando at all. It's after Schifando, and it says clearly that only for wrongful termination do you not have to go through with the civil service hearing. Basically, any other tort, which of course you can bring against a public employee, you're going to have to exhaust internally through to the final finding. And if the county is even alleviated of the burden of having to serve the actual person, the case says, there's a case, it's the Herman case, says the individual has to be served, not the representative, but the individual herself, and no, she was never served. And there's not one address on that proof of service anyway. It's as if the county had had this planned all along. And if only the county would have negotiated in good faith with its loyal and dedicated employee, we would not have to be here. We need to figure out what the problems are and why the county is continually failing to investigate when women are complaining repeatedly about discrimination. The most interesting thing about this case is defendants are admitting. Other women on the stand at the civil service hearing, which I was there myself, and it was not very litigated at all. It wasn't clear what questions were asked and why and what purpose was served. Also, the court limited that testimony because that was not the forum to determine that claim. Why is the county ignoring these complaints? If there are indications that things are off, the county must not ever ignore these things. We must have recourse for employees who complain about discrimination at work. And right now, Alameda County is denying that right. Thank you very much. Thank you for your arguments. The case just argued will stand submitted.
judges: Lynn, Noonan, Watford